**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| GACE CONSULTING ENGINEERS, DPC | Case No.  23-10789 (LGB) |
| Debtor.[1] | |

## AMENDED CHAPTER 11 PLAN OF REORGANIZATION (SUBCHAPTER V)

WILK AUSLANDER LLP
825 Eighth Avenue, Suite 2900
New York, New York 10019
212 981 2328
Eric J. Snyder, Esq.
Email: Esnyder@wilkauslander.com

*Debtor and Debtor-in-Possession*

Dated: November 30, 2023

NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTOR OR ANY OTHER PARTY IN INTEREST AND THE PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THE PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.

YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THE PLAN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THE PLAN BY THE BANKRUPTCY COURT

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of its federal tax identification number, is 5207

## INTRODUCTION

GACE Consulting Engineers, D.P.C. ("Debtor" or "GACE"), proposes the following amended chapter 11 plan of reorganization (the "Plan") pursuant to Subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Capitalized terms used in the Plan have the meanings ascribed to such terms in Article I.A of the Plan.

This Plan provides creditors and interest holders of the Debtor with information to enable them to make an informed judgment concerning the method by which the Debtor plans to reorganize and emerge from bankruptcy. **If the Bankruptcy Court confirms the Plan, it will be binding on the Debtor, its creditors, equity holders, and other interested parties.**

This Plan provides for a comprehensive reorganization of the Debtor to preserve its going concern value and future business. All general unsecured creditors are classified in Class 3, and upon class acceptance of the Plan such creditors will receive all of the Reorganized Debtor's Disposable Income over a three-year period commencing after the Effective Date (but not earlier than January 1, 2025), which is expected to result in an approximate 21.6% recovery for Allowed Class 3 Claims and is substantially greater than the estimated proceeds of a hypothetical Chapter 7 liquidation of the Debtor's assets for the benefit of creditors which the Debtor believes would result in no distribution on account of Class 3. The anticipated 21.6% recovery for Holders of Allowed Class 3 Claims is based on the Debtor's annexed Financial Projections (defined below).

The Debtor believes that this Plan, which contemplates the continuation of the Debtor's business, represents the best possible return to Holders of Claims. The Debtor believes this Plan will successfully reorganize the Debtor and that confirmation of the Plan is in the best interests of the Debtor, its creditors, and its equity interest holders. **Accordingly, the Debtor strongly urges you to vote in favor of this Plan.**

## THE PLAN CONFIRMATION HEARING

Pursuant to Section 1128 of the Bankruptcy Code, a Confirmation Hearing will be held on January__, 2024 at __:__ __.m. Eastern Time. The Bankruptcy Court may adjourn the Confirmation Hearing from time to time without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

Any objection to confirmation of the Plan must be made in writing and specify in detail the name and address of the objecting party, all grounds for the objection and the amount of the claim or number of shares of stock held by the objecting party. Any such objection must be Filed with the Bankruptcy Court and served so that it is received by the Bankruptcy Court, the Office of the United States Trustee, the Subchapter V Trustee, and Counsel for the Debtor on or before _____, 2024 at 5:00 p.m. Eastern Time. Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

Failure by a creditor or interest holder to timely file an objection to the Plan or timely cast a ballot in accordance with the Plan Scheduling Order shall constitute an agreement by silence to accept the terms contained in this Plan.

Any interested party desiring further information about the Plan should contact counsel of

record for the Debtor, Eric Snyder of Wilk Auslander LLP, 825 Eighth Avenue, Suite 2900, New York, New York, 10019 telephone: (212) 981-2328; email: esnyder@wilkauslander.com.

## BACKGROUND

### A.    DESCRIPTION AND HISTORY OF GACE'S BUSINESS

The Debtor is a Design Professional Corporation formed under New York Business Corporation Law Section 1503 in November 1979. The business is a structural engineering firm focused on residential, commercial and industrial building projects by applying knowledge of design, construction procedures, zoning regulations, building codes, and building materials from its offices located at 148 Madison Avenue, Floor 4, New York, New York 10016 (the "New Premises"). The Debtor currently employs 29 individuals. The Debtor's Interest holders are Alyson Sikorski (29.37%), Chok-Pan Wong (29.37%), Christopher Behan (29.37%), Matthew McMillen (6.89%), Nay Naing (2.69%) and Shira Kinzbrunner (2.31%).

### B.    EVENTS LEADING TO GACE'S FILING FOR CHAPTER 11 RELIEF

The Debtor commenced this chapter 11 case to stay the acts of the Debtor's former landlord, A&H Real Estate, Inc. ("A&R"). A&R commenced an action (the "Old Lease Action") prior to the Petition Date seeking money damages from Debtor resulting from Debtor's breach of its previous lease (the "Old Lease"). The Old Lease Action threatened the Debtor's ability to continue to operate as a going concern. As a result, on May 17, 2023 (the "Petition Date"), the Debtor filed a petition for relief under Subchapter V of Chapter 11 the Bankruptcy Code. As of the Petition Date, the Debtor was a party to 346 agreements to provide engineering services (the "Service Agreements").

### C.    EVENTS DURING THE CHAPTER 11 PERIOD

From the Petition Date through the date of this Plan, the Debtor has been operating its business as a Debtor-in-Possession, consistent with §§1107 and 1108 of the Bankruptcy Code. Since the Petition Date, the Debtor has: a) rejected the lease with A&H as of the Petition Date [ECF # 26]; b) sought to retain accountants to assist the Debtor in filing Monthly Operating Reports ("MORs") as required by the Office of the United States Trustee [ECF # 39]; c) filed MORs for May, June, July, August, September and October, 2023; d) obtained financing to pay for professional liability insurance [ECF # 36]; e) obtained approval to satisfy pre-petition wages [ECF # 7, 29]; f) obtained approval to retain counsel [ECF # 31]; g) obtained approval to maintain bank accounts and business records [ECF # 30]; and h) obtained approval of Agreement regarding treatment of the claim of A&R [ECF # 56].

## LIQUIDATION ANALYSIS AND FINANCIAL PROJECTION

Pursuant to section 1129(a)(7) of the Bankruptcy Code, in order for this Plan to be confirmed, each creditor must either have voted to accept this Plan (or be deemed to have accepted this Plan), or this Plan must provide for each creditor to receive at least as much as it would as of the Effective Date if the Debtor were liquidated under Chapter 7 on such date. This is commonly referred to as the "best interests of creditors test."

Here, the Debtor's liquidation analysis ("Liquidation Analysis") and financial projections that include projections of Disposable Income ("Financial Projections") are annexed to the Plan as **Exhibit A** and **Exhibit B**, respectively. The Debtor believes that Disposable Income represents the most accurate measurement of projected disposable income (and all available cash) for distribution to creditors pursuant to sections 1191(c) and (d) of the Bankruptcy Code. In addition, under no circumstance will the Debtor's interest holders in Class 3 receive distributions on account of such interests during the three year Commitment Period (defined below) for Class 3.

With respect to Class 3, the best interests of creditors test is easily satisfied as Holders of Allowed Unsecured Claims will receive an approximate distribution equal to 21.6% in a Chapter 11 and will receive no distribution in a Chapter 7.

### D.    GACE'S ABILITY TO MAKE PAYMENTS UNDER THIS PLAN

In order for the Bankruptcy Court to confirm this Plan, GACE must demonstrate that it will have enough cash over the life of the Plan to make the payments required hereunder and operate its business. GACE developed the annexed Financial Projections that demonstrate its ability to satisfy Claims in accordance with this Plan.

**SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1193 OF THE BANKRUPTCY CODE, FEDERAL RULE OF BANKRUPTCY PROCEDURE 3019 AND THIS PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THIS PLAN PRIOR TO ITS EFFECTIVE DATE.**

### ARTICLE I --DEFINITIONS, RULES OF INTERPRETATION AND CONSTRUCTION

A.    Defined Terms. As used herein, the following terms have the respective meanings specified below, except as expressly provided in other Sections of the Plan, unless the context otherwise requires (such meanings to be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined). Any capitalized term used in the Plan but not defined herein that is used in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.

1.    "Administrative Claim" means a Claim for any expense Allowed under sections 503(b), 507(b), or 546(c)(2) of the Bankruptcy Code and entitled to priority under section 507(a)(2) of the Bankruptcy Code, including: (a) actual and necessary costs and expenses incurred in the ordinary course of the Debtor's business; (b) actual and necessary costs and expenses of preserving the Estate or administering the Chapter 11 Case; and (c) all Professional Fee Claims to the extent Allowed by Final Order under sections 330, 331, or 503 of the Bankruptcy Code.

2.    "Allowed" means, with respect to any Claim or Interest, such Claim or Interest or any portion thereof that the Debtor has assented to the validity of or that has been (a) expressly allowed under the Plan, (b) that is not Disputed, (c) that is either allowed or determined by a Final Order of a court of competent jurisdiction, or (d) that is agreed to by the Debtor or Reorganized Debtor and the Holder of such Claim or Interest.

3.    "Bankruptcy Code" means Title 11 of the United States Code as of the Petition Date.

4.    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York, which has jurisdiction over the Chapter 11 Case.

5.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

6.    "Business Day" means any day, excluding Saturdays, Sundays, and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in New York City.

7.    "Cash" means currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, and wire transfers of immediately-available funds.

8.    "Causes of Action" means any and all actions, claims, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, including actions brought prior to the Petition Date, actions under chapter 5 of the Bankruptcy Code, and actions against any Person or entity for failure to pay for products or services provided or rendered by the Debtor, all claims, suits or proceedings relating to enforcement of the Debtor's intellectual property rights, including patents, copyrights and trademarks, and all claims or causes of action seeking recovery of the Debtor's or the Reorganized Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtor's or the Reorganized Debtor's businesses, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

9.    "Chapter 11 Case" means the case under chapter 11 of the Bankruptcy Code for the Debtor pending before the Bankruptcy Court under Case No. 23-10789 (LGB).

10.    "Claim" means a "claim" as defined in section 105 of the Bankruptcy Code against the Debtor or its property, including any Claim arising after the Petition Date.

11.    "Claim Objection Deadline" unless extended by the Bankruptcy Court, the first Business Day that is one hundred eighty (180) calendar days after the Effective Date, or such later date as may be ordered by the Bankruptcy Court.

12.    "Class" means a category consisting of Holders of Claims or Interests substantially similar in nature to the Claims or Interests of other Holders placed in that category, as designated in Article III of the Plan.

13.     "Cure" means the payment of Cash by the Debtor, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to cure monetary defaults under an Executory Contract or Unexpired Lease of the Debtor and to permit the Debtor to assume that contract or lease under section 365(a) of the Bankruptcy Code.

14.     "Disposable Income" means cash on hand that is not reasonably necessary for the payment of or reserve for expenditures necessary for the continuation, preservation, or operation of the Debtor's business, calculated and determined in the Financial Projections (annexed hereto as Exhibit B).

15.     "Disputed" means, as to any Claim (or portion thereof) or Interest against the Debtor, a Claim or Interest to the extent the allowance of such Claim or Interest is the subject of (i) a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Confirmation Order, and which objection, request for estimation or dispute has not been withdrawn, with prejudice, or determined by an order of the Bankruptcy Court, or (ii) a dispute that is being adjudicated by a court of competent jurisdiction in accordance with non-bankruptcy law.

16.     "Effective Date" means the date on which this Plan shall take effect, which date shall be a Business Day on or after the Confirmation Date on which all conditions precedent to the effectiveness of this Plan specified in Article VIII, have been satisfied, or, if capable of being waived, waived which date shall be specified in a notice Filed by the Reorganized Debtor with the Bankruptcy Court.

17.     "Estate" means the bankruptcy estate of the Debtor created pursuant to § 541 of the Bankruptcy Code.

18.     "Exculpated Parties" means each of the following solely in their capacity as such: (a) the Debtor, (b) the Reorganized Debtor, (c) the Debtor's and Reorganized Debtor's managers and officers, (d) the Subchapter V Trustee, (e) the Professionals, and (f) only to the extent found to be fiduciaries of the Estate, the Debtor's and Reorganized Debtor's equityholders, employees, advisors, professionals, and agents.

19.     "Executory Contract" means any contract to which the Debtor is a party that may be subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

20.     "File," "Filed," or "Filing" means, respectively, file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

21.     "Final Order" means: (a) an order or judgment of the Bankruptcy Court, as entered on the docket in the Chapter 11 Case (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction; or (b) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Bankruptcy Court (or any other court of competent jurisdiction, including in an appeal taken) in the Chapter 11 Case (or in any related adversary proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or

other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; provided that the possibility a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent such order from being a Final Order.

22.     "General Unsecured Claim" means any Claim against the Debtor existing as of the Petition Date other than an Administrative Claim, a Professional Fee Claim, a Secured Claim, a Priority Tax Claim or Other Priority Claim and is included in Class 3.

23.     "General Unsecured Bar Date" means July 14, 2023, the date set by the Bankruptcy Court as the last day for Holders of General Unsecured Claims to file Proofs of Claim.

24.     "Holder" means a Person or entity holding a Claim or Interest.

25.     "Impaired" means impaired within the meaning of section 1124 of the Bankruptcy Code.

26.     "Interest" means any equity interest in the Debtor represented by any certificated or uncertificated shares or membership interest issued to any Person before the Effective Date, and any warrants, options, or rights to purchase any equity interest.

27.     "Other Priority Claim" means any Claim (or portion of a Claim) entitled to priority under section 507(a) of the Bankruptcy Code other than Priority Tax Claims and Administrative Claims. rejection of an Executory Contract or Unexpired Lease.

28.     "Person" means an individual, corporation, partnership, limited liability company (including its members), joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

29.     "Petition Date" means May 17, 2023, the date on which the Debtor commenced the Chapter 11 Case.

30.     "Priority Tax Claim" means any Claim of a Governmental Unit, as defined in section 101(27) of the Bankruptcy Code, entitled to priority under section 507(a)(8) of the Bankruptcy Code.

31.     "Professional Fee Claim" means an Administrative Claim for compensation and reimbursement of expenses of a Professional incurred before the Effective Date submitted in accordance with sections 328, 330, 331, or 503(b) of the Bankruptcy Code.

32.     "Professional" means a Person: (a) employed in the Chapter 11 Case pursuant to an order of the Bankruptcy Court under sections 327, 328, 363, or 1103 of the Bankruptcy Code and compensated for services under sections 327, 328, 329, 330, and 331 of the

Bankruptcy Code or order of the Bankruptcy Court; or (b) for whom compensation and reimbursement has been Allowed by a Final Order under section 503(b) of the Bankruptcy Code. For the avoidance of doubt the Trustee appointed pursuant to section 1183(a) of the Bankruptcy Code is considered a Professional hereunder.

33.    "Professional Fee Bar Date" means the first Business Day that is 30 days after the Effective Date.

34.    "Proof of Claim" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

35.    "Pro Rata" means a proportionate share, such that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of that Allowed Claim is the same as the ratio of all consideration distributed on account of all Allowed Claims in that Class to the amount of all Allowed Claims in that Class.

36.    "Reorganized Debtor" means the Debtor upon and after the Effective Date of this Plan.

37.    "Schedules" means the schedules of assets and liabilities and statement of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

38.    "Subchapter V Trustee" or the "Trustee" means Samuel Dawidowicz trustee appointed in this Chapter 11 Case pursuant to section 1183 of the Bankruptcy Code, or such other Person appointed in such capacity.

39.    "Unexpired Lease" means a lease of nonresidential real property to which Debtor is a party that is subject to assumption or rejection under §365 of the Bankruptcy Code.

40.    "Unimpaired" means, with respect to a Class of Claims or Interests, such Class is not Impaired.

B.    Rules of Construction.

1.    Generally. For purposes of the Plan: (i) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified or supplemented; (ii) unless otherwise specified, all references in the Plan to Sections, Articles, and exhibits are references to Sections, Articles, and exhibits of or to the Plan; and (iii) the rules of construction set forth in section 102 of the Bankruptcy Code and the Bankruptcy Rules shall apply unless superseded herein or in the Confirmation Order.

2.    Time Periods. In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

3.    Miscellaneous Rules. (i) The words "herein," "hereof," "hereunder," and other words of similar import refer to the Plan as a whole, not to any particular Section, subsection, or clause, unless the context requires otherwise; (ii) whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the mas

4.    Masculine, feminine or neuter includes the masculine, feminine, and the neuter; and (iii) captions and headings to Articles and Sections of the Plan are inserted for convenience of reference only and are not intended to be a part or to affect the interpretation of the Plan.

## ARTICLE II -- TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims are not classified and are not entitled to vote on the Plan.

A.    Administrative Claims. Except for Professional Fee Claims and Priority Tax Claims (each of which is treated separately as discussed below), and except to the extent that a Holder of an Allowed Administrative Claim and either the Debtor or Reorganized Debtor, as applicable, agree to less favorable treatment, each Holder of an Allowed Administrative Claim (other than Professional Fee Claims) will, in exchange for full and final satisfaction, settlement, release, and discharge of such Allowed Administrative Claim, be paid the full unpaid amount of such Allowed Administrative Claim in Cash within forty-five (45) days after the Effective Date[2] or as soon as reasonably practicable thereafter, provided, however, that Administrative Claims incurred by the Debtor in the ordinary course of business shall be paid in the ordinary course of business in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court. Additionally, all statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due.

B.    Professional Fee Claims. Each Allowed Professional Fee Claim shall be paid in full in Cash on the later of: (a) three days after the Professional Fee Claim is Allowed and (b) another date on which the Holder of the Professional Fee Claim and the Debtor or Reorganized Debtor agree. Each Person seeking an award by the Bankruptcy Court of Professional Fees must File with the Bankruptcy Court and serve on Reorganized Debtor its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by the Professional Fee Bar Date.

C.    Priority Tax Claims. As of November 27, 2023, the Debtor is only aware of one Priority Tax Claim: a claim asserted by New York City for Commercial Rent Tax that accrued prior to the Petition Date (2022-23) with respect to the Old Lease equal to $31,948.78 in tax and interest. Although the Debtor was forwarded a statement describing the claim, no Proof of Claim has been filed with the Bankruptcy Court. Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Priority Tax Claim, each Holder of an Allowed Priority

---

[2] Section 1191(E) of the Bankruptcy Code permits certain administrative claims to be paid through the Plan.

Tax Claim due and payable on or prior to the Effective Date shall receive the treatment set forth in section 1129(a)(9)(C) of the Bankruptcy Code or sooner. To the extent any Allowed Priority Tax Claim is due and owing on or before the Effective Date, such Claim shall be paid in full in Cash under the Plan.

## ARTICLE III --CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

A.    _Classification and Treatment Generally_. Pursuant to sections 1122, 1123 and 1190 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests, which are placed in a particular Class for all purposes under the Plan, including, without limitation, voting, confirmation, and receiving distributions under the Plan, as set forth herein. In accordance with section 1123(a)(1) of the Bankruptcy Code, Claims arising under sections 507(a)(2) or 507(a)(8) of the Bankruptcy Code are not classified and their treatment is set forth in Article II.

B.    _Classification and Treatment of Classified Claims and Interests_. Classified Claims and Interests are divided into numbered classes as follows:

| Class | Treatment | Entitled To Vote |
|---|---|---|
| Class 1 – Other Priority Claims | Unimpaired | No (Deemed to Accept) |
| Class 2 – Secured Claim | Unimpaired | No (Deemed to Accept) |
| Class 3 – General Unsecured Creditors | Impaired | Yes |
| Class 4 – Interests | Unimpaired | No (Deemed to Accept) |

1.    **Class 1**: Other Priority Claims

(a)    Treatment: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in exchange for full and final satisfaction of such Claim, each Holder shall receive payment of its Allowed Other Priority Claim in full in cash on, or as soon as reasonably practicable thereafter, the later of (a) the Effective Date and (b) the date on which such Claim becomes an Allowed Other Priority Claim. The Debtor does not believe there are any Other Priority Claims.

(b)    Impairment and Voting: Class 1 is Unimpaired and all Holders of Class 1 Claims are conclusively deemed to have accepted the Plan and are not entitled to vote on the Plan.

2.    **Class 2**: Secured Claims

(a)    Scope of Class. The only Class 2 Secured Claim of which the Debtor is aware is Peoples Premium Finance, Inc. in the amount of $72,775.08 of November 27, 2023.

(b)    Treatment: Except to the extent that a Holder of an Allowed Secured Claim agrees to less favorable treatment, each Holder of a Secured Claim shall

receive at the option of the Debtor and in exchange for full and final satisfaction of such Claim, (i) cash in an amount equal to the allowed amount of such Claim, on the later of the Effective Date and the date on which such Claim becomes allowed; (ii) delivery of the collateral securing such Allowed Claim and payment of any interest required by section 506(b) of the Bankruptcy Code; or (iii) such other treatment necessary to satisfy the requirements of section 1129 of the Bankruptcy Code. Each Holder of an Allowed Secured Claim shall retain the liens securing such Claim as of the Effective Date until full and final satisfaction of the Claim is made as provided herein, after which such liens shall be deemed released, terminated, and extinguished, in each case without further notice or order of the Bankruptcy Court.

(c)     Impairment and Voting: Class 2 is Unimpaired and all Holders of Class 2 Claims are conclusively deemed to have accepted the Plan and are not entitled to vote on the Plan.

3.     **Class 3**: General Unsecured Claims

(a)     Scope of Class. The Holders of Allowed Claims in Class 3 consist solely of General Unsecured Claims.

(b)     Treatment: Except to the extent that a Holder of an Allowed Other General Unsecured Claim agrees to less favorable treatment, each Holder shall, in exchange for full and final satisfaction of such Other General Unsecured Claim, receive its pro rata portion of all Disposable Income paid in annual installments for a three year (*i.e.* 36 month) period commencing on or about the Effective Date (the "Commitment Period"). All Distributions of Disposable Income shall be paid during the Commitment Period pursuant to the following distribution schedule:

(i)     On or before February 1, 2025: the Disposable Income distribution date for the last twelve months ended December 31, 2024;

(ii)     On or before February 1, 2026: the Disposable Income distribution date for the last twelve months ended December 31, 2025; and

(iii)     On or before February 1, 2027: the Disposable Income distribution date for the last twelve months ended December 31, 2026.

After reviewing Schedule F and the Claims filed prior to the General Unsecured Bar Date, the Debtor believes that there are approximately 12 Claims in Class 3, totaling approximately $3,800,000. The Debtor projects that payments of Disposable Income during the Commitment Period will be greater than the amount Holders of an Allowed Other General Unsecured Claims would receive in a hypothetical chapter 7 liquidation of the Debtor as set forth in the annexed Liquidation Analysis.

(c)    <u>Impairment and Voting</u>: Class 3 is Impaired and all Holders of Class 3 Claims are entitled to vote on the Plan.

4.    **Class 4**: Interests

(a)    <u>Treatment</u>: All Holders of Interests shall retain their Interests.

(b)    <u>Impairment and Voting</u>: Class 4 is Unimpaired and all Holders of Class 4 Interests are conclusively deemed to have accepted the Plan and are not entitled to vote on the Plan.

## <u>ARTICLE IV --MEANS OF IMPLEMENTATION</u>

A.    <u>General Settlement of Claims</u>. Solely to the extent provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable and in the best interest of the Debtor and its estate.

B.    <u>Plan Funding</u>. It is expected that all distributions under this Plan will be funded from the Reorganized Debtor's cash on hand and/or earnings and made by the Reorganized Debtor in accordance with Article VII of this Plan. Nevertheless, in accordance with section 1190(2) of the Bankruptcy Code, the Reorganized Debtor is prepared to submit future earnings and other income to the supervision and control of the Trustee if the Plan is ultimately confirmed under section 1191(b) of the Bankruptcy Code, but the Debtor will do so only to the extent necessary to execute this Plan and only to the extent required by the Bankruptcy Court in its Confirmation Order.

C.    <u>Continued Reorganized Operations</u>. The Reorganized Debtor will continue to operate with the primary purpose of continuing to conduct the Debtor's business as it has prior to the Commencement Date.

D.    <u>Corporate Governance</u>. The Reorganized Debtor will continue to be governed by its three majority shareholders, Alyson Sikorski, Chok-Pan Wong and Christopher Behan. On the Effective Date, the Debtor's officers will remain officers of the Reorganized Debtor.

E.    <u>Section 1145 Exemption</u>. In accordance with section 1145 of the Bankruptcy Code, the retention of Interests under the Plan is exempt from all federal, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealer in such securities and is not deemed to be a public offer of such securities.

## ARTICLE V --EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      Executory Contracts and Unexpired Leases.

1.      The Debtor's: a) Project Agreements; b) current Lease with 148 Madison; and c) two plotter/printer leases with Documents Solutions Leasing, shall be assumed on the Effective Date. All other executory contracts not specifically assumed above shall be deemed rejected as of the Effective Date. **Entry of the Confirmation Order shall constitute a Final Order approving the deemed rejection or the assumption of such Executory Contracts or Unexpired Leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code.**

2.      All assumed Executory Contracts and Unexpired Leases shall remain in full force and effect for the benefit of the Reorganized Debtor, and be enforceable by the Reorganized Debtor in accordance with their terms, notwithstanding any provision in such assumed Executory Contract or Unexpired Lease that prohibits, restricts or conditions such assumption, assignment or transfer. Any provision in the assumed Executory Contracts and Unexpired Leases that purports to declare a breach or default based in whole or in part on commencement or continuance of this Chapter 11 Case or any successor cases shall be deemed unenforceable. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including, without limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized Debtor's assumption of such Executory Contract or Unexpired Lease, then such provision will not be enforced in connection with the Chapter 11 Case such that the transactions contemplated by the Plan will not entitle the non-debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order shall re-vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified by a court order or agreement by the Debtor (or the Reorganized Debtor) and the applicable non-debtor counterparty.

B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases

1.      Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within 30 days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, and (3) the Effective Date. **Unless otherwise provided by a Final Order of the Bankruptcy Court, any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, the Estate, Reorganized Debtor, or the property of any of the foregoing entities without the need for any objection by the Reorganized Debtor or further notice to, or action, order, or approval of the Bankruptcy Court or any other entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.**

       **2.**     **All Filed Claims arising from the rejection of Executory Contracts or Unexpired Leases shall be classified as Class 3 Other General Unsecured Claims and shall be treated in accordance with Article III.B and may be objected to in accordance with the provisions of Article VI of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.**

       C.     <u>Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.</u>

       1.     Any counterparty to an Executory Contract or Unexpired Lease subject to assumption under the Plan as identified on the Schedule of Assumed Contracts and Cure that objects to (1) the assumption of such Executory Contract or Unexpired Lease, (2) the proposed Cure amount, or (3) any other matter pertaining to assumption, **shall File with the Bankruptcy Court a written objection thereto and serve it in a manner to be actually received by each of the following by no later than 5:00 p.m. (Eastern time) on** _____ **2023**: (i) counsel to the Debtor: Wilk Auslander LLP, 825 Eighth Avenue, New York, NY 10119, Attn: Eric J. Snyder; (ii) the U.S. Trustee, Office of the United States Trustee, United States Custom House, One Bowling Green Station, Room 534, New York, New York 10001, Attn: Gregory Zipes, Esq.; and (iii) the Subchapter V Trustee, Samuel Dawidowicz, 215 East 68th Street, Ste. 20, New York, NY 10065; provided, however, that notwithstanding anything to the contrary herein, (i) the Debtor or the Reorganized Debtor may settle such dispute without any further notice to, or action, order, or approval of the Bankruptcy Court, but in the absence of such resolution all timely Filed responses or objections will be heard by the Bankruptcy Court at the Confirmation Hearing or on such other date agreed to by the parties or ordered by the Bankruptcy Court; and (ii) the Debtor or the Reorganized Debtor shall have the right to reject any such Executory Contract of Unexpired Lease that is the subject to dispute, whether by amending the Schedule of Assumed Contracts and Cure or otherwise, as long as such rejection occurs by the Effective Date or by such other date as agreed by the Debtor (or Reorganized Debtor) and the applicable non-debtor counterparty. Any counterparty to an Executory Contract or Unexpired Lease subject to assumption as identified on the Schedule of Assumed Contracts and Cure that fails to timely object to any of the foregoing matters related to assumption will be deemed to have assented and will be deemed to have forever released and waived any such objection. A final Schedule of Assumed Contracts and Cure shall be filed within one business day of the Effective Date with the Confirmation Notice (as such term is defined in the Confirmation Order). Payment of undisputed Cure amounts on the Schedule of Assumed Contracts and Cure shall be made within 7 days after the occurrence of the Effective Date. Upon resolution of the disputed portion of any Cure amount by the Court or otherwise, the Debtor or Reorganized Debtor (as applicable) shall pay such amount to the non-debtor counterparty within seven (7) days of such resolution. Resolution of the Cure amounts shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

       2.     Payment of any Cure amount shall be made following the entry of a Final Order or orders resolving any dispute related thereto and approving the assumption and shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

       3.     The assumption of any Executory Contract or Unexpired Lease pursuant to the Plan (as identified on the Schedule of Assumed Contracts and Cure) or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary,

including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed in the Chapter 11 Case, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged upon notice and hearing**.

D.    <u>Modifications, Amendments, Supplements, Restatements, or Other Agreements</u>. Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated pursuant hereunder.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

E.    <u>Contracts and Leases Entered into After the Petition Date</u>. Contracts and leases entered into after the Petition Date by the Debtor, and any Executory Contracts and Unexpired Leases assumed by the Debtor, may be performed by the Reorganized Debtor in the ordinary course of business and in accordance with the terms thereof.

F.    <u>General Reservation of Rights</u>. Nothing contained in the Plan shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtor, or any of its affiliates, has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor or the Reorganized Debtor, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

## <u>ARTICLE VI --DISTRIBUTIONS</u>

A.    <u>Reorganized Debtor to Make Distributions</u>. Unless ordered otherwise in the Confirmation Order, the Reorganized Debtor shall make all payments required by this Plan. Upon the Effective Date, all payments or funds received by the Trustee, if any, during this Chapter 11 Case shall be returned to the Reorganized Debtor after deducting any fee owed to the Trustee.[3]

B.    <u>Method of Payment; Payments, Filings, and Notices Only on Business Days</u>. Payments of Cash under the Plan must be made by check drawn on a domestic bank or by wire transfer from a domestic bank. Whenever any payment, distribution, filing, delivery, or notice to be made under the Plan is due on a day other than a Business Day, such payment, distribution,

---

[3] As of the Filing of this Plan the Trustee has not received any estate funds and it is not anticipated the Trustee will receive any estate funds prior to confirmation of this Plan.

filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following Business Day.

      C.     <u>Undeliverable or Unclaimed Distributions</u>. Payments required by this Plan, if made by check, shall be mailed to the address set forth in any Proof of Claim, to the address set forth in any written notice of address change Filed with the Bankruptcy Court or provided to the Debtor or its counsel, or to the address set forth in the Schedules if no Proof of Claim has been Filed and no written notice of address change has been Filed or provided. If any distribution to a Holder of an Allowed Claim is returned to the Reorganized Debtor as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtor is notified in writing of such Holder's then- current address or other necessary information for delivery, at which time such undelivered distribution shall be made to such Holder within ninety (90) days of receipt of such Holder's then- current address or other necessary information; provided that any such undelivered distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revert to the Reorganized Debtor at the expiration of six (6) months from the later of (a) the Effective Date and (b) the date of the initial attempted distribution. Notwithstanding anything to the contrary contained in the Plan, nothing in this provision shall act as a bar to entry of a final decree Closing the Chapter 11 Case.

      D.     <u>Time Bar to Cash Payments</u>. Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Thereafter, the amount represented by such voided check shall irrevocably revert to the Reorganized Debtor free and clear of any restrictions. Any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtor, the Estate, or the Reorganized Debtor.

      E.     <u>Setoff and Recoupment</u>. From and after the Effective Date, the Reorganized Debtor may, to the extent permitted by section 558 of the Bankruptcy Code or applicable non-bankruptcy law, set off against or recoup from any Claim on which distributions are to be made, any Causes of Action of any nature whatsoever that the Reorganized Debtor may have against the Holder of such Claim; <u>provided</u>, <u>however</u>, that neither the failure to effect such setoff or recoupment nor the Allowance of any Claim shall constitute a waiver or release of any right of setoff or recoupment, nor of any other Cause of Action.

      F.     <u>No Interest</u>. Unless otherwise specifically provided for in this Plan, post-petition interest shall not accrue or be paid on any Claim.

      G.     <u>Disputed Claims</u>. No payment will be made on account of a Disputed Claim unless such Claim has been Allowed by final non-appealable order. The Reorganized Debtor shall have until the Claim Objection Deadline to file objections to any Disputed Claim. The Claim Objection Deadline may be extended on motion of the Reorganized Debtor for cause, or on consent. For the avoidance of doubt, the Reorganized Debtor shall have the authority to settle and resolve any Disputed Claim on such terms as it deems appropriate without the need for Bankruptcy Court approval. Prior to making the initial distribution on account of any Claim in Class 3, the Reorganized Debtor shall establish a reserve for the payment of any Disputed Claim in Class 3, to the extent such Claim becomes Allowed. The amount set aside in the reserve for any Disputed Claim shall be the amount that would be paid on account of such Claim if Allowed in the lower

of: (a) the amount set forth in the applicable Proof of Claim and (b) the estimated amount of such Claim for payment purposes, as determined by the Bankruptcy Court.

      H.      <u>Withholding Taxes</u>. The Reorganized Debtor shall be entitled to deduct any federal, state or local withholding taxes from any payments made under this Plan. As a condition to making any such payment, the Reorganized Debtor may require that the Holder of an Allowed Claim provide its Taxpayer Identification Number and such other information and certification as may be deemed necessary for it to comply with applicable tax reporting and withholding laws. If any Holder of an Allowed Claim fails to provide such number, information or certification within sixty days from the date of first notification to the Holder of the need for such information, such Holder's distribution will be treated as unclaimed property in accordance with Article VII.C herein or the amount required to be withheld may be so withheld and turned over to the applicable authority.

## ARTICLE VII --EFFECT OF THE PLAN ON CLAIMS, INTERESTS AND CAUSES OF ACTION

      A.      <u>Binding Effect</u>. On and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against the Debtor who held such Claim at any time during the Chapter 11 Case and its respective successors and assigns, whether or not the Claim of such Holder is Impaired under the Plan and whether or not such Holder has been deemed to accept the Plan.

      B.      <u>Vesting of Assets</u>. Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estate (including Causes of Action, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall vest in the Reorganized Debtor free and clear of all Claims, liens, charges, interests, and encumbrances. As of and following the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims, Interests, or Causes of Action without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

      C.      <u>Discharge</u>. In the event this Plan is confirmed under section 1191(a) of the Bankruptcy Code, as of the Effective Date the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in section 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt imposed by this Plan.

      In the event this Plan is confirmed under section 1191(b) of the Bankruptcy Code, confirmation of this Plan does not discharge any debt provided for in this Plan unless the Bankruptcy Court grants a discharge on completion of all payments due under this Plan, or as otherwise provided in section 1192 of the Bankruptcy Code.

      **D.**      **<u>Releases by the Debtor</u>. Except as otherwise provided herein, as of the Effective Date, for good and valuable consideration, each of (i) the Debtor's current and former officers, directors, principals, members, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents, and other representatives of the Debtor, in each case solely in their capacity as such, are deemed released and discharged by the Debtor and its Estate from any and all claims, obligations, suits, judgments, damages,**

demands, debts, rights, Causes of Action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, arising in law, equity or otherwise that the Debtor or its Estate would have been legally entitled to assert in their own right or on behalf of the Holder of any Claim or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the Plan, the negotiation, formulation or preparation of the Plan, the Plan Supplement, or related agreements, instruments, or other documents in connection with the transactions contemplated under the Plan, or any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; <u>provided</u> that nothing in the Plan, including this paragraph shall release (i) any obligations under the Plan or the Plan Supplement; or (ii) any acts constituting willful misconduct, gross negligence, intentional fraud or criminal conduct as determined by a Final Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases by the Debtor, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the releases provided by the Debtor in this Article VII.D of the Plan: (a) are in exchange for the good and valuable consideration provided by the parties released by the Debtor (b) are in the best interests of the Debtor and all Holders of Claims and Interests; (c) are fair, equitable, and reasonable; and (d) were given and made after due notice and opportunity for hearing.

E.    <u>Releases By Holders Of Claims</u>. To the greatest extent permissible under law, as of the Effective Date, except as otherwise provided in the Plan or in the Confirmation Order, each Releasing Party, in consideration for the obligations of the Debtor under the Plan, the distributions under the Plan and other contracts, instruments, releases, agreements or documents executed and delivered in connection with the Plan, shall be deemed to have released the Debtor, Reorganized Debtor, the Estate, and each of their affiliates, current and former officers, directors, principals, members, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents, and other representatives, each in their capacity as such (collectively, the "<u>Released Parties</u>"), from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any direct claims held by any such Person against each Released Party or derivative claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that each such Person would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor or its affiliates, the Debtor's restructuring, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any such Person, the restructuring of Claims and Interests before or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan, the Confirmation Order, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtor taking place on or before the Effective Date; <u>provided</u> that, notwithstanding anything to the contrary in the foregoing, nothing in the Plan, including this paragraph shall (i) release any obligations under the Plan; (ii) release any acts constituting

willful misconduct, gross negligence, intentional fraud or criminal conduct as determined by a Final Order; or (iii) operate as a release of Holders of Other Priority Claims in Class 1 of the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases by the Releasing Parties, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the releases set forth in this Article VII.E of the Plan: (a) are in exchange for the good and valuable consideration provided by the Released Parties; (b) are in the best interests of the Debtor and all Holders of Claims and Interests; is (c) are fair, equitable and reasonable; and (d) were given and made after due notice and opportunity for hearing.

F.    **Injunction.**

1.    **Generally.** Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim that is unclassified by the Plan or that is classified by Article III of the Plan or that is subject to a distribution under the Plan, or an Interest or other right of an equity holder, are permanently enjoined from taking any of the following actions on account of any such Claims or Interests or rights: (i) commencing or continuing in any manner any action or other proceeding against any property to be distributed under the Plan; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against any property to be distributed under the Plan; (iii) creating, perfecting, or enforcing any lien or encumbrance against any property to be distributed under the Plan; and (iv) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan or the Bankruptcy Code.

2.    Limited Scope. Nothing in this Plan: (i) extinguishes, prohibits, or otherwise limits the right of any Holder of a Claim to assert a right to setoff or recoupment arising in connection with that Claim as part of the resolution and treatment of that Claim under the Plan; (ii) extinguishes, prohibits, or otherwise limits the right of the Estate or Reorganized Debtor to assert and prevail on any Cause of Action; (iii) enjoins or otherwise precludes any party-in-interest from enforcing the terms of the Plan and the Confirmation Order. **Following the Effective Date, the injunctions provided by this Article VII.F of the Plan shall remain permanently in force and effect.**

G.    **Exculpation. To the extent permitted under section 1125(e) of the Bankruptcy Code and the New York Rules of Professional Conduct, the Exculpated Parties shall not have any liability to any Holder of a Claim or Interest for any claims or causes of action arising before, on or after the Petition Date and prior to or on the Effective Date for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence. In all respects, the Exculpated Parties are entitled to rely on the advice of counsel with respect to their duties and responsibilities under the Plan.**

H.    <u>Preservation and Application of Insurance</u>. The provisions of this Plan shall not diminish or impair in any manner the enforceability of coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtor, any directors, trustees, or officers of the Debtor, or any other Person, including, without limitation, insurance for the Debtor's directors and officers.

I.    <u>Retention, Reservation and Prosecution of Causes of Action</u>. Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue any and all Causes of Action of the Debtor, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement pursuant to the Schedule of Retained Causes of Action, and the Reorganized Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. **No Person may rely on the absence of a specific reference in the Plan to any Cause of Action against them as any indication that the Debtor or the Reorganized Debtor will not pursue any and all available Causes of Action against them. The Debtor and the Reorganized Debtor expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan.** Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Reorganized Debtor expressly reserves all Causes of Action of the Debtor for later adjudication, and therefore no preclusion doctrine (including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel judicial, equitable, or otherwise) or laches shall apply to such Causes of Action upon, after, or as a consequence of confirmation or consummation of the Plan.

In addition, the Reorganized Debtor reserves and shall retain Causes of Action of the Debtor notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Case or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Person shall vest in the Reorganized Debtor. The Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE VIII --CONDITIONS TO OCCURRENCE OF EFFECTIVE DATE

A.    <u>Conditions to Effectiveness</u>. The Effective Date does not occur unless and until:

1.    The Confirmation Date occurs and the Confirmation Order has become a Final Order;

2.    No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code is pending; and

3.    All instruments and agreements to be issued, entered into, delivered, or Filed under the Plan are issued, entered into, delivered, or Filed and are effective.

B.    <u>Waiver of Conditions</u>. The Debtor may waive any condition to confirmation or the Effective Date, in whole or in part, at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to confirmation and consummation of the Plan.

C.    <u>Effect of Non-Occurrence of the Effective Date</u>. If the Effective Date does not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against the Debtor; or (b) constitute an admission, acknowledgement, offer or undertaking by the Debtor.

## <u>ARTICLE IX --MISCELLANEOUS</u>

A.    <u>Retention of Jurisdiction</u>. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain non-exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan, including jurisdiction to:

1.    resolve any matters related to Executory Contracts and Unexpired Leases, including: (i) the assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine the allowance of Claims resulting therefrom including the amount of Cure, if any, required to be paid; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (iii) any dispute regarding whether a contract or lease is or was executory or expired;

2.    adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Case, this Plan, or that were the subject of proceedings before the Bankruptcy Court, prior to the Effective Date, proceedings to adjudicate the allowance of Disputed Claims, and all controversies and issues arising from or relating to any of the foregoing;

3.    ensure that distributions to Holders of Allowed Claims are accomplished as provided herein and adjudicate any and all disputes arising from or relating to distributions under the Plan;

4.    hear and determine or resolve any and all matters related to Causes of Action;

5.    enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified, and/or vacated;

6.    issue and implement orders in aid of execution, implementation, or consummation of this Plan;

7.      consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

8.      hear and determine all applications for allowance of compensation and reimbursement of Professional Fee Claims under this Plan or under sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code; determine requests for the payment of Claims entitled to priority under section 507(a)(1) of the Bankruptcy Code, including compensation and reimbursement of expenses of parties entitled thereto; adjudicate, decide, or resolve any and all matters related to sections 1192 and/or 1141 of the Bankruptcy Code;

9.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan and disputes arising in connection with any Person or entity's obligations incurred in connection with the Plan;

10.     hear and determine all suits or adversary proceedings to recover assets of the Debtor and property of its Estate, wherever located;

11.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

12.     grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, or in the event that the Effective Date does not occur, to consider any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4);

13.     hear any other matter not inconsistent with the Bankruptcy Code;

14.     hear and determine all disputes involving the existence, nature or scope of the Debtor's discharge;

15.     issue a final decree and enter an order closing the Chapter 11 Case; and

16.     enforce all orders previously entered by the Bankruptcy Court.

After the Effective Date, the Bankruptcy Court shall retain jurisdiction with respect to each of the foregoing items and all other matters that were subject to its jurisdiction prior to the Confirmation Date. Nothing contained herein shall be construed to increase, decrease or otherwise modify the independence, sovereignty or jurisdiction of the Bankruptcy Court.

B.      Effecting Documents: Further Transactions; Timing. The Debtor and Reorganized Debtor are authorized and directed as of the Effective Date, without further order of the Bankruptcy Court, to execute, deliver, File, or record all contracts, instruments, releases, and other agreements or documents, and to take all actions necessary or appropriate to effect and further evidence the terms of the Plan. All transactions required to occur on the Effective Date under the terms of the Plan are deemed to have occurred simultaneously.

C.    Governing Law. Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the laws of the State of New York shall govern the rights and obligations arising under the Plan, without giving effect to principles of conflicts of law of New York.

D.    Exemption from Transfer Taxes. Under section 1146(a) of the Bankruptcy Code: (a) the issuance, distribution, transfer, and exchange of assets or property of the Estate; (b) the execution, assignment, modification, or recording of any lease or sublease; and (c) the execution, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, the Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to, the foregoing are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, or real estate transfer tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents are directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

E.    Post-Effective Date Fees; Final Decree. Notwithstanding anything to the contrary contained in the Plan, all fees payable through the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid on the Effective Date, or as soon as practicable thereafter. The Reorganized Debtor is responsible for paying any post-Effective Date fees under 28 U.S.C. § 1930(a)(6) and Filing post-confirmation reports until the Bankruptcy Court enters a final decree, which Reorganized Debtor must seek as soon as feasible after distributions under the Plan have commenced. Notice of application for a final decree need be given only to those Holders of Claims and Interests and other parties that, after the Effective Date, specifically request such notice.

F.    Modification and Amendments. The Debtor may alter, amend, or modify this Plan under section 1193(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of this Plan as defined in section 1101(2) of the Bankruptcy Code, the Debtor may under section 1193(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan.

G.    Revocation, Withdrawal, or Non-Consummation. The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Effective Date, which revocation or withdrawal shall occur upon the Debtor's Filing of a notice thereof, and to File subsequent chapter 11 plans. If the Debtor revokes or withdraws the Plan, it shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Causes of Action or Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

H.    Notices. After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered on the parties below shall be served as follows:

If to the Reorganized Debtor:

GACE Consulting Engineers, D.P.C.
148 Madison Avenue
New York, New York 10016
Attention: Alyson Sikorski, President
Email:asikorski@gace.net

With a copy (which shall not constitute notice) to:

Wilk Auslander LLP
825 Eighth Avenue, Suite 2900
New York, New York 10019
Attn: Eric J. Snyder, Esq.
Email:esnyder@wilkauslander.com

If to the U.S. Trustee:
Office of the United States Trustee for the Southern District of New York
United States Custom House
Room 534
New York, New York 10001
Attn: Gregory Zipes, Esq.
Email: Greg.Zipes@usdoj.gov

If to the Subchapter V Trustee:
Samuel Dawidowicz
215 East 68th Street, Ste. 20
New York, York, NY 10065
Email: samuel dawidowicz@gmail.com

     I.      <u>Entire Agreement</u>. Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

     J.      <u>Severability</u>. If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the Debtor's consent, and (c) nonseverable and mutually dependent.

K.    <u>Exhibits</u>. All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.

L.    <u>Conflicts</u>. Except as set forth in the Plan, to the extent that any provision of any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; <u>provided</u>, <u>however</u>, that if there is a conflict between this Plan and a Plan Supplement document, the Plan Supplement document shall govern and control.

Respectfully submitted,
as of November 30, 2023,

**GACE Consulting Engineers D.P.C.**

By: /s/ Alyson Sikorski
Name: Alyson Sikorski
Title:  President

# EXHIBIT A

LIQUIDATION ANALYSIS

|  | CHAPTER 11 | CHAPTER 7 |
|---|---|---|
| **Assets:** | | |
| Receivables | $1,326,492.63[4] | $74,872.04[5] |
| | | |
| **Total:** | | |
| **Liabilities:** | | |
| Secured Claim (Class 1) | $ 72,775.08 | $0 |
| Priority Taxes: | $ 31,948.78 | $ 31,948.78 |
| Expenses for Chapter 7 Trustee: | | $ 50,000 |
| Class 3 Claims: | $3,800,000[6] | $7,028,540[7] |
| **Distribution to Class 3 (Ex. B):** | **21.6%[8]** | **0** |

---

[4] As of November 30, 2023, the Debtor's total receivables equal $2,946,175.88. Of this amount, $2,197.455.50 are greater than 90 days old ("Older Receivables") and $ 748,720.38 are less than 90 days old ("Newer Receivables"). The Debtor's believes that if the Case is confirmed, and the Debtor's continues to operate, it will collect 29.7% on account of Older Receivables ($652,644.28) and 90% on account of the Newer Receivables ($673,848.35), totaling $1,326,492.63.

[5] If the case was converted to a Chapter 7, and the Debtor's business would cease operating, the Debtor believes a Chapter 7 Trustee would collect nothing on account of Older Receivables and 10% on account of Newer Receivables ($74,872.04). If the Debtor's should cease operating, the customers would assert both setoff claims related to its obligation to pay its obligations and additional "cover" damages to secure substitute engineering services (See fn 7).

[6] Based on the Schedules and a review of the Proofs of Claims. This figure may increase or decrease during the claims reconciliation process under Article VI(g) of the Plan, however, the Debtor does not believe that this sum will increase more than 5%.

[7] The total billing by the Debtor under the Service Agreements equals $16,192,700. If the case was converted to Chapter 7, the Debtor believes that the counter-parties to the Agreement would assert Class 3 unsecured claims equal to 20% ($3,238,540) of the billing to secure substitute engineering services.

[8] Assumes Disposable Income equals $187,377 for 2024, $276,821 during 2025 and $356,832 for 2026, totaling $821,030. *See* Ex. B. Assumes Class 3 General Unsecured Claims equal $3,800,000. *See* footnote 6 above.

# EXHIBIT B

## GACE Consulting Engineers - 3-year Financial Projection
### Schedule of Projected Disposable Income
### For the Period 2024 through 2026

| | Actual and Budget 2023 | Projection period 2024 | 2025 | 2026 |
|---|---|---|---|---|
| Revenue[5] | $ 4,800,000 | $ 4,992,000 | $ 5,191,680 | $ 5,399,347 |
| **Operating Expenses:** | | | | |
| Salary[1] | 3,065,684 | 3,157,655 | 3,252,384 | 3,349,956 |
| Payroll Taxes | 249,393 | 256,875 | 264,581 | 272,519 |
| Payroll Fee (PEO) | 66,662 | 67,996 | 69,355 | 70,743 |
| 401k Contribution | 50,724 | 51,739 | 52,773 | 53,829 |
| Health Insurance | 310,317 | 316,524 | 322,854 | 329,311 |
| Rent | 232,400 | 237,048 | 241,789 | 246,625 |
| Utilities | 14,400 | 14,688 | 14,982 | 15,281 |
| Workers Comp | 21,600 | 22,032 | 22,472 | 22,922 |
| Disability Insurance | 33,319 | 33,986 | 34,666 | 35,359 |
| Deltek Vision (Accounting Software) | 10,719 | 10,933 | 11,152 | 11,375 |
| Engineering Software Licenses | 85,094 | 86,795 | 88,531 | 90,302 |
| Symantec License (anti-virus) | 11,000 | 11,220 | 11,444 | 11,673 |
| Newforma[3] | 25,729 | - | - | - |
| Office 365 & Team Phone | 15,000 | 15,300 | 15,606 | 15,918 |
| Insurance and Auto | 38,000 | 38,000 | 38,000 | 38,000 |
| Professional Liability Insurance | 226,400 | 226,000 | 226,000 | 226,000 |
| Officer's Life Insurances (Principals) | 22,333 | 22,779 | 23,235 | 23,699 |
| Legal Fees | 22,500 | 22,950 | 23,409 | 23,877 |
| IAS Inspection Renewal | 3,100 | 3,162 | 3,225 | 3,290 |
| Meal & Entertainment | 25,080 | 25,582 | 26,093 | 26,615 |
| Equipment Rental[4] | 29,910 | 29,910 | 16,000 | 16,001 |
| General Office Expense[2] includes, supplies, phone, cable, marketing, prof dev dues, recruitment expenses and tuition reimbursement | 140,000 | 142,800 | 145,656 | 148,569 |
| Pre-Petition Commercial Rent Tax | - | 10,650 | 10,650 | 10,651 |
| **Total Operating Expenses** | 4,699,365 | 4,804,623 | 4,914,859 | 5,042,515 |
| **Projected Disposable Income** | $ 100,635 | $ 187,377 | $ 276,821 | $ 356,832 |

Notes:

1. Salary projection is based on 3% increase per inflation.
2. Other expenses projection is based on 2% increase per our previous experience with the vendors.
3. Newforma will not be renewed beyond 2023
4. Equipment Rental - The lease of a large format plotter will end in 2024 and the plotter will not be required for our use.
5. Revenue project is based on 4% increase. This is per our company growth average in the last 10 years.